## KEYSTONE PIPE & SUPPLY CO. v. CRABTREE.

No. 23483. Sept. 25, 1935.

Rehearing Denied Nov. 12, 1935.

Hatcher & Kice and Slay & Simon, for plaintiff in error.

J. W. Bolen and Claude Thompson, for defendant in error.

PER CURIAM. The plaintiff in error, as plaintiff below, filed its action against Crabtree Brothers & Devine, a copartnership, upon a verified account, and on July 27, 1929, caused an attachment to be issued and levied on 230 acres of land belonging to one D. C. Crabtree, who was not a member of the copartnership and not a defendant in the action. This attachment was dissolved January 7, 1931. On October 3 1930, the said D. C. Crabtree filed his interplea setting up his ownership of the land and praying for dissolution of the attachment, and for damages in the sum of $8,625 and $250 attorney's fees. The issues raised by the interplea were tried to a jury on September 23, 1931, and a verdict returned in favor of intervener, assessing his damages at $1,000 and $500 attorney's fees. The attorney's fees were reduced by the court to $250. From judgment on this verdict, plaintiff appeals.

At the time of the levy two test wells were being drilled for oil not far from this land, and the oil and gas royalties in this land had a market value of $50 to $60 per acre. While intervener's title was clouded by the attachment, the wells were abandoned as dry, and the oil and gas royalties became practically worthless.

Plaintiff's first contention, that no land belonging to intervener was attached, is unsupported by the evidence and is contradicted by the sheriff's return on the order of attachment. But the second proposition, that the attachment was constructive, not resulting in damage to the owner, goes to the heart of the whole matter. It is ordinarily true that an attachment on real property does not interfere with the possession and use of the land, and damage to the owner is merely nominal, but this is not necessarily true in all cases. The general rule is clearly stated in 6 Corpus Juris, 539, section 1319, in the following language:

"While, ordinarily, depreciation in the value of real property, which occurs while the levy remains in force, there being no change of possession or loss of the use thereof, is not the immediate result of the attachment and no recovery beyond nominal damages can be had therefor, the cases do not go so far as to hold that under no circumstances can actual damages be recovered. Thus, where a pending sale is broken up by the levy itself, unaided by the act or delinquency of attachment defendant, and depreciation and loss follow, there is ample foundation for the recovery of actual damages." Hoover v. First Nat. Bank (Tex. Civ. App.) 192 S. W. 1149; Tsesmelis v. Sinton St. Bank (Tex. Civ. App.) 35 S. W. (2d) 451-453; Nixon v. First St. Bk. (Tex. Civ. App.) 127 S. W. 882; Oscar v. Sackville (Tex. Civ. App.) 270 S. W. 897.

The same authority, on page 538, section 1318, states the rule applicable to the wrongful attachment of personal property as follows:

"Injury to or depreciation in value of personal property attached is an element of actual damage, and may be recovered in an appropriate action or proceeding therefor; and the rule in this respect has been held

not to be affected by the fact that the injury or depreciation was the result of the negligence of the officer making the levy."

In Kyd, Sheriff, et al. v. Cook, the Supreme Court of Nebraska, 76 N. W. 524, the court lays down the rule as to the amount of damages as follows:

"One's measure of damages for wrongful attachment of his property is—under proper pleadings—all the damages he has sustained thereby. Gains prevented are losses, and these are damages.

"A loss of profits is a loss which may be reasonably, naturally, and ordinarily expected to follow from the closing up of a merchant's place of business and the seizure of his goods."

The Supreme Court of Wisconsin, in Anderson v. Sloane et al., 40 N. W. 214, in discussing the damages recoverable for the wrongful attachment of a stock of goods, say:

"The damages recoverable in such case are (1) interest on the value of the goods seized during their retention, or in lieu thereof, at plaintiff's option, the value of his business during that time; (2) depreciation in the value of the goods during that period; and (3) any expense incurred in obtaining the return of the goods, including costs paid on the illegal judgments and executions, store rent or clerk hire during defendants' possession of the store, and costs and counsel fees incurred in the motion to vacate the judgment and execution."

In Union Nat. Bank of Chicago v. Cross et al. (Wis.) 75 N. W. 992, the same court, in discussing the measure of damages recoverable for the wrongful attachment of stock of goods, say:

"* * * In case of a wrongful levy upon a stock of goods kept for sale, which were afterwards returned to the owner, he may recover as part of the damages any depreciation in the value of his goods during the time they are held. Anderson v. Sloane, 72 Wis. 566, 40 N. W. 214; Beveridge v. Welch, 7 Wis. 465. The reason is plainly because the goods are kept for the purpose of sale, and, had they not been seized, they might have been sold at their value when seized; hence the depreciation in value may be properly said to be a reasonable and certain element of damages. But when property kept for use, and not for sale, is attached, the reason no longer holds good, because there is no presumption that the property would or could have been sold, but the presumption is to the contrary. * * *"

See, also, Stump v. Porter et al., 31 Okla. 157, 120 P. 639.

This court has held that oil in place is a mineral and part of the realty, but when severed from the ground and reduced to possession it is personal property. Carpenter v. Shaw, 134 Okla. 29, 272 P. 393; Barnes et al. v. Keys et al., 36 Okla. 6, 127 P. 261, and in Janeway et al. v. Whittaker, 106 Okla. 83, 223 P. 197, this court said:

"This court has consistently held in many cases that the only right that one can have, and all the right one can have in oil and gas, apart from the land itself, and a royalty interest, is the right to enter upon the land and explore for those substances, and this right is a chattel real and subject to sale and ownership" (citing Ramey v. Stephney, 70 Okla. 87, 173 P. 72, and Barker v. Campbell-Radcliff Land Co., 64 Okla. 249, 167 P. 468.)

"Chattels real" are defined by Black as being "interests in land which devolve after the manner of personal estate, as leaseholds. As opposed to freeholds, they are regarded as personal estate."

It is a matter of common knowledge that oil and gas royalties in the vicinity of drilling wild-cat wells often sell at prices far in excess of the value of the land itself, and cease to have any value when the well proves to be a failure. The right to sell and dispose of these royalties is a valuable right which the owner is entitled to exercise unhampered by unjust and wrongful attachments. The attachment in this case was adjudged to be wrongful and dissolved. No appeal was taken from the order of dissolution within the time provided in section 555, O. S. 1931, and the order is therefore final.

After a careful review of the record, we are unable to say that there is no evidence reasonably tending to support the verdict. The instructions given by the trial court are substantially in accord with the views herein expressed.

For these reasons, the judgment of the district court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. L. Trevathan, H. L. Fogg, and J. N. Roberson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Trevathan, and approved by Mr. Fogg and Mr. Roberson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.