[Civ. No. 6997.   Third Dist.   Dec. 16, 1943.]

STANLEY DAVIS, Appellant, v. MARGARET WOOD, et al., Respondents.

Ralph Bancroft for Appellant.

Charles E. Johnson, Mark M. Brawman and Chester E. Ross in pro. per., for Respondents.

SCHOTTKY, J. pro tem.—Appellant commenced an action against respondents for slander of title to real property. The court below made an order sustaining respondents' demurrers to appellant's third amended complaint without leave to amend, and this appeal is from the judgment entered in favor of respondents on such order.

In view of the fact that the entire question involved upon this appeal is whether or not the trial court erred in sustaining respondents' demurrers without leave to amend, we deem it proper to set forth the allegations of the complaint, which are:

"II

"That on or about the 29th day of May, 1935, plaintiff herein and one J. Henry Wood, made and executed a certain agreement in writing by the terms and provisions of which the said J. Henry Wood leased and let unto plaintiff herein and plaintiff hired and took possession from said J. Henry Wood, all that certain real estate with the equipment thereon

situate in Siskiyou County, State of California, which property is mining property and known as the Portuguese Mine, which said lease was recorded in the office of the County Recorder of Siskiyou County in Vol. 49 of official records, page 203 and said lease is still in full force and effect and plaintiff is the leasehold owner in possession of said real property and equipment.

"III

"That during the months of January and February, 1941, all and each of said defendants unjustly, maliciously and unlawfully conspired together to obtain plaintiff's real property hereinbefore described, and that in pursuance of said conspiracy on the part of said defendants and in order to carry out said conspiracy to the injury of plaintiff the said defendants falsely represented and pretended that they had some valid claim upon the land hereinbefore described; and thereupon said defendants prepared or caused to be prepared what purported to be notices of Location of Mining Claims covering and describing the same real property hereinbefore described and so leased to plaintiff, and thereafter and on or about the 19th day of February, 1941, said defendants maliciously caused said purported notices of locations of mining claims to be recorded in the office of the County Recorder of Siskiyou County, State of California, and the same have ever since remained of record in said county and apparently in full force and effect and a cloud upon plaintiff's title.

"IV

"That the pretense of said defendants in making said purported notices of location of mining claims and placing the same on record in said county was to create a cloud upon and claim against the property of plaintiff hereinbefore described when in truth and in fact said defendants and each of them well knew and had notice that said land was leased to said plaintiff and well knew and had notice that plaintiff was in actual possession of said land at said time and was actually and honestly working said mining ground in compliance with the terms of said lease and the defendants well knew and had notice that the annual work was done thereon as provided by law and the mining regulations; that defendants or any of them had no interest in the lands above described and the statements made in said notices of locations of mining claims were wholly false and known to be so by each

and all of said defendants at the time said notices of locations of mining claims were made and filed with the County Recorder of Siskiyou County; that by reason of said conspiracy, representations, pretenses and false claims of said defendants, the plaintiff has been greatly embarrassed in the free enjoyment, use and disposition of his aforesaid property and the interest of the plaintiff has been and now is greatly depreciated and plaintiff greatly damaged by reason of the said pretended claims of said defendants resulting from and growing out of said conspiracy and said false and fraudulent claims.

## "V

"That the defendants never had and have not now any interest, right, title or claim directly or indirectly to said land herein before described or any part thereof and that these defendants in recording said instruments acted maliciously and in order to vex and harass plaintiff herein.

## "VI

"That said defendants, in recording said instruments, cast a cloud upon and a slander upon plaintiff's title to the lands described herein; that the recording of said notices of locations of mining claims by defendants decreased the value of said leasehold interests and rendered it unmarketable, all to the damage of said real estate and to plaintiff in the sum of Ten Thousand dollars.

## "VII

"That the acts of said defendants, and each of them, as herein alleged, have been actuated by malice, and that said defendants and each of them have been guilty of oppression and malice in their actions, as aforesaid; that this is a proper case for punitive damages and this plaintiff has sustained exemplary or punitive damages in the sum of Five Thousand dollars."

Respondents Brawman and Johnson filed general demurrers and the remaining respondents filed both general and special demurrers. The grounds of demurrer, in addition to the general demurrer, so far as necessary to note here, may be briefly summarized as follows: 1. That the complaint does not state a cause of action in that it does not describe the real property involved with such certainty that the same may be determined from the face of the complaint; 2. That the

complaint is uncertain in that it cannot be ascertained therefrom what real property plaintiff claims to hold as a leasehold, what the term of the lease is, and whether it is still in force; 3. That the complaint is uncertain in that it does not appear what interest Wood, from whom appellant leased the property, had in the property; 4. That the complaint is uncertain in that it does not appear therefrom how the recording of said notice of location embarrassed appellant in the use and enjoyment of said property, or decreased the value of his interest, or rendered it unmarketable.

In its ruling upon the demurrer the trial court stated:

"I have also delayed the matter to permit reading the decision of the California Supreme Court in *Gudger* v. *Manton*.

"In the instant case no pleading of malice or of facts indicating actual or implied malice exists, and above all, no pleading of proper damages is made. There is absolutely no showing in the complaints, as variously amended, that any deal of plaintiff was interfered with nor any other matter than would justify damages in a slander of title action.

"As the complaint has been amended many times herein, and the issue can now be taken up for appeal if the parties desire, I hereby sustain the demurrers to the third amended complaint without leave to amend."

Appellant in his opening brief states: "It is obvious from the ruling on demurrer that the lower Court based its decision upon the case of *Gudger* v. *Manton*, 21 Cal.2d 537 [134 P.2d 217]. Appellant will therefore confine his argument to that particular decision." Appellant then proceeds to discuss the question whether it was necessary to allege in his complaint that some pending sale was interfered with, and ignores the other grounds of demurrer. No closing brief was filed by appellant. Respondents in support of the judgment make the following points: (1) The complaint is insufficient because of its failure to describe any real property; (2) defendants are rival claimants to the real property and are privileged to disparage plaintiff's title to the extent necessary to establish their own claims thereto, and (3) the complaint contains no proper allegations of damages. We believe the questions involved upon this appeal can be discussed in a more orderly manner by first taking up the contentions made by respondents.

In support of their first contention, respondents point out that the complaint merely alleges that appellant leased from

one Wood certain real property situated in Siskiyou County, and known as the Portuguese Mine, and that the lease was recorded in the office of the county recorder. Respondents cite the following language from the case of *Burkett* v. *Griffith,* 90 Cal. 532 [27 P. 527, 25 Am.St.Rep. 151, 13 L.R.A. 707] at page 541:

"It was necessary for the plaintiff to set forth and describe in his complaint the property respecting which the defamatory statements had been made, as well as to aver his title thereto, so that it might be shown wherein the defendant had done him any injury."

Respondents also upon this point cite the case of *Aalwyn's Law Institute* v. *Martin,* 173 Cal. 21 [159 P. 158], which was an action to quiet title in which the complaint described the property as "Rights of way, terminal lands, and all the property known as the 'Ocean Shore Railway Property,' more particularly described," giving the volume and number of a page of the public records. Upon appeal the court held that the description was insufficient even upon a general demurrer.

We do not believe that either reason or authority require that in an action involving slander of title, the property involved need be described in the complaint with the same degree of particularity as is necessary in an action to quiet title. As stated in the above quotation from *Burkett* v. *Griffith, supra,* all that is required is that plaintiff describe the property and his title thereto "so that it might be shown wherein the defendant has done him any injury." The complaint in the instant case described the property as "all that certain real estate with the equipment thereon, situate in Siskiyou county, which property is mining property and known as the Portuguese Mine," and set forth that appellant had leased said property from one Wood, which lease was recorded and was in full force and effect, and that appellant was the leasehold owner of said property. The said complaint further alleged that respondents had caused to be prepared and recorded notices of location covering and describing the same real property. It is therefore apparent from the complaint that the property which appellant alleged he was the leasehold owner of, namely the mining property known as the "Portuguese Mine," was the same property covered by the Notices of Location recorded by re-

spondents. While appellant might well have set forth the description of said property and his interest therein with greater particularity, we do not believe that under the advanced and more liberal and less technical rules of pleading that have been established in recent years, it can reasonably be held that in an action for slander of title, the description of the property and appellant's interest was either insufficient or uncertain. While a trial court might be justified in requiring an amendment enlarging upon said description, it would not, in our opinion, be justified in sustaining a general demurrer upon that ground; and in fairness to the trial court there is nothing in the record here to indicate that the court's ruling was based upon the alleged insufficiency of the description.

Respondents' second contention in support of the judgment is that defendants are rival claimants to the real property and are privileged to disparage appellant's title to the extent necessary to establish their own claims thereto. In support of this contention respondents quote the following language from *Gudger* v. *Manton,* 21 Cal.2d 537 [134 P.2d 217] at page 545:

"A rival claimant of property is conditionally privileged to disparage or justified in disparaging another's property in land by an honest and good faith assertion of an inconsistent legally protected interest in himself. (See *Thompson* v. *White,* 70 Cal. 135 [11 P. 564]; Rest. Torts, § 647.) The levy of an execution is an assertion of a claim to an interest in that it is a lien on the property levied upon. Therefore, if in the instant case defendants acted in good faith, that privilege defeats plaintiff's action. Actual malice has a bearing upon the question of good faith."

Respondents assert that the property in question was mining property which was owned by the federal government and would be open to location if the prior locator failed to do the annual assessment work as required by the mining laws, and that if they were in good faith asserting a claim adverse to the appellant they were privileged to disparage the title of the appellant to the extent that was necessary to effect said location. Respondents have apparently overlooked the fact that the complaint alleges that said notices of location were recorded by respondents maliciously and with knowledge that their claims were wholly false. Taking such

allegations at their face value, as we must upon this appeal, where only the sufficiency of the complaint is involved, they clearly negative any privilege on the part of the respondents to record said notices of location.

Respondents' final and principal contention in support of the judgment is that the complaint contains no proper allegation of damages, and this appears also to have been the principal ground upon which the trial court sustained the demurrers.

The allegations of the complaint as to damages are in paragraphs IV and VI thereof and have been hereinbefore set forth. Respondents assert that said allegations of damages are insufficient, and the trial court stated that there "was no showing that any deal of plaintiff was interfered with nor any other matter that would justify damages in a slander of title action." The trial court also stated that he had delayed ruling upon the demurrer to permit his reading the decision in *Gudger* v. *Manton, supra,* and it is evident that the trial court regarded that decision as determinative of the insufficiency of the allegations as to damages.

In view of the frequent reference to *Gudger* v. *Manton, supra,* we think it may be helpful to briefly analyze that case. In 1932, defendant Manton obtained a judgment in New York against plaintiff's wife arising out of a pre-marital tort. In 1935, an action upon said judgment was commenced in California, and a default judgment entered against plaintiff's wife. In 1938 defendant levied and recorded a writ of execution upon all interest of plaintiff's wife in certain described real property standing in plaintiff's name. Plaintiff's wife had no interest in the property, it being plaintiff's separate property. Plaintiff commenced an action to quiet title and for damages and was awarded compensatory damages in the sum of $16,000. The execution was released after the commencement of the action. There was evidence that plaintiff had had two bona fide offers for the property but that the prospective purchasers had withdrawn the offers upon learning of the recording of the execution. The Supreme Court in an exhaustive and well considered opinion held that a finding of damages was sustained by such evidence. The court said at page 554:

"Where as here, there have been losses of sales and a decline in the market value of property thereafter during

the continuance of the disparagement of title (the execution lien here), defendant has not been injured when the court in fixing the damages selects the difference between the amount offered at the sales and the value of the property at the time the execution was released. That rule takes into consideration the effect of the defect in the plaintiff's title with relation to the fluctuation in the value during that time. Those principles have been applied in wrongful attachment cases. (See *Keystone Pipe & Supply Co.* v. *Crabtree,* 174 Okla. 562 [50 P.2d 1086]; *Nixon* v. *First State Bank,* 60 Tex.Civ.App. 7 [127 S.W. 882]; *Hoover* v. *First Nat. Bank,* (Tex.Civ.App.) 192 S.W. 1149; 7 C.J.S., Attachment, § 559.) In *Heath* v. *Lent,* 1 Cal. 410, there was no loss of sales by reason of the wrongful attachment and the court seems to reason that the wrong did not cause the depreciation in the value of the property, and there being nothing to show that plaintiff's loss of his opportunity to sell during the continuance of the levy had affected him. In the tort in question the proper measure of damages is the amount which will compensate for all detriment proximately caused thereby. (Civ. Code, § 3333.)''

However, there is nothing in the case of *Gudger* v. *Manton* which requires a complaint to show that any pending deal or sale was interfered with, but it was held in that case that evidence that a pending sale was interfered with sustained a finding of damages. Respondents evidently did not take the pains to examine the complaint in *Gudger* v. *Manton* or they would not have made the statement contained on page 14 of their brief that appellant ''tries to distinguish the case of *Gudger v. Manton where the definite allegations of damages concerned a loss of sales.''* (Italics ours.) We have examined that complaint and find that the allegations therein as to damages are much less specific than those in the complaint in the instant case, and are as follows:

''That said defendants, and each of them, in causing levy of execution to be made under said writ, cast a cloud and a slander upon plaintiff's title in and to said real property and that the levying of said writ and the maintenance thereof by the refusal of defendants, and each of them, to cause said levy to be discharged and released, decreased the value of said real estate and renders it unmarketable, all to the damage of said real estate and said plaintiff, . . .''

It is, of course, true that the question of the sufficiency of the complaint was not involved or discussed in the *Gudger* v. *Manton* case, but it is worthy of note that a judgment for $16,000 based upon a complaint with substantially the same allegations as to damages as are contained in the complaint in the instant case was not attacked either in the District Court of Appeal or in the Supreme Court upon the ground that the complaint was insufficient.

The court, in *Gudger* v. *Manton,* quoted with approval section 624 of Restatement of Torts, as follows:

"One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused."

Section 633 of the same work reads as follows:

"The pecuniary loss for which a publisher of disparaging matter is liable under the rules stated in §§ 624 and 626-627 is restricted to

"(a) that pecuniary loss which directly and immediately results from the impairment of the vendibility of the thing in question caused by publication of the disparaging matter, and

"(b) the expense of litigation reasonably necessary to remove the doubt cast by the disparagement upon the other's property in the thing or upon the quality thereof."

In the comment on said section 633 it is stated:

"b. *Loss caused by prevention of a particular sale.* The most usual manner in which a third person's reliance upon disparaging matter causes pecuniary loss is by preventing a sale to a particular purchaser. The disparaging matter may prevent a sale by causing a purchaser to break an agreement already entered into for the purchase of the thing."

"f. *Loss caused by prevention of a sale to unknown purchasers.* The disparaging matter may, if widely disseminated, cause pecuniary loss by depriving its possessor of a market in which, but for the disparagement, his land or other thing might with reasonable certainty have found a purchaser. In such case the impossibility or the great difficulty of showing the identity of the particular person or persons who were

dissuaded from purchasing the thing by the publication of the disparaging matter makes evidence of the owner's inability to avail himself of a ready market for the thing in question sufficient proof of the loss and often of its extent; indeed, this inability to dispose of readily marketable things is also sufficient evidence that the defamatory matter has come to the knowledge of unknown possible purchasers and has led them to refrain from buying.''

And, as already quoted, the court in *Gudger* v. *Manton,* said at page 555: ''In the tort in question the proper measure of damages is the amount which will compensate for all detriment proximately caused thereby. (Civ. Code, § 3333.)''

■ From the foregoing statements of the law relating to damages for slander of title, or, to state it more accurately, for wrongful disparagement of title, it is apparent that the elements of damages are the loss caused by the impairment of vendibility and the cost of clearing the title. ■ Therefore, in our opinion, a complaint which alleges that by reason of the recording of a notice of location by respondents the leasehold interest of appellant was greatly depreciated in value and was rendered unmarketable, to appellant's damage in the sum of $10,000, states the ultimate fact of damages and is sufficient as against a general demurrer. And while a trial court might be justified in sustaining a special demurrer and in requiring plaintiff to set forth his damages with greater particularity, we believe that the court below erred in sustaining respondents' demurrer without leave to amend.

For, as was stated by Chief Justice Gibson in the recent case of *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 718, 720 [128 P.2d 522, 141 A.L.R. 1358], a case in which the Supreme Court reversed a judgment based on an order sustaining a demurrer to the fifth amended complaint without leave to amend:

''Where a complaint is sufficient against a general demurrer, however, and any uncertainties or ambiguities in the pleading can be corrected by amendment, it is apparent that denial of leave to amend results in a disposition of the cause upon technical grounds alone. The plaintiff who has stated a cause of action in such a case is denied a trial on the merits of his action if any of the grounds of special demurrer is well taken', despite the fact that the deficiencies can be corrected. It has been held, under such circumstances,

that denial of leave to amend constitutes an abuse of discretion even though it be conceded that the trial court had authority to sustain the special demurrer because of defects in the form of the pleading. (*Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97, 104 [114 P.2d 1]; *Olivera* v. *Grace,* 19 Cal.2d 570, 579 [122 P.2d 564]; and cases cited therein.) ...''

''We therefore hold that it was an abuse of discretion for the trial court to sustain the demurrer without leave to amend. We do not decide, however, that the complaint was not subject to special demurrer, and the trial court may in its discretion require the clarification of uncertainties or ambiguities in the complaint. (*Guilliams* v. *Hollywood Hospital, supra,* p. 104.)''

We believe that as a matter of sound public policy litigation should be disposed of upon substantial rather than upon technical grounds, and that the trial judge should not sustain a demurrer without leave to amend where it is merely defective for uncertainty. It is true that there must be an end to litigation and a court might be justified in sustaining a demurrer without leave to amend in a case where a plaintiff had failed to make amendments suggested by the court. But it must not be lost sight of, as pointed out in the recent case of *Estate of Dupont,* 60 Cal.App.2d 276 [140 P.2d 866], that ''a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts.'' A plaintiff should not be denied a trial upon the merits of his action because some of the grounds of special demurrer may be well taken if the uncertainties or ambiguities can be corrected by amendment.

In view of the foregoing we conclude that the trial court abused its discretion in sustaining respondents' demurrer without leave to amend. We do not decide, however, that the complaint was not subject to special demurrer, and the trial court may, in its discretion, require the clarification of any uncertainties or ambiguities therein.

The judgment is reversed.

Adams, P. J., and Thompson, J., concurred.