[Civ. No. 24331. Fourth Dist., Div. One. Dec. 11, 1981.]

BARBARA ARTHUR, Plaintiff, Cross-defendant and Respondent, v. EDITH BRANSON DAVIS, Defendant, Cross-complainant and Appellant.

COUNSEL

Thomas Dobyns for Defendant, Cross-complainant and Appellant.

Stuart W. Knight for Plaintiff, Cross-defendant and Respondent.

OPINION

**WIENER, Acting P. J.**—Defendant Edith Davis appeals from a judgment in favor of plaintiff Barbara Arthur on various legal and equitable

causes of action relating to a certain parcel of Orange County real property. This case is one of those demanding and taxing exercises where the record reveals the court was called upon to deal with questionable and materially inconsistent factual assertions made by the respective parties. Under such circumstances, absent any substantial errors of law, we must trust in the discretion of the trial judge and the common sense of the jury to resolve the case consistent with principles of equity and justice. Finding no such legal errors here, we affirm the judgment.

### Factual and Procedural Background

Plaintiff Barbara Arthur and her now-deceased husband, Murray, agreed to buy a house in Garden Grove, California, during May of 1969. Defendant Edith Branson Davis, a licensed real estate broker, handled the escrow. Shortly before escrow was scheduled to close, Murray Arthur told Davis he would be unable to come up with the entire amount required for the down payment. Davis advanced the Arthurs approximately $1,600 in order to allow the escrow to close.

Roughly one month later, Davis requested Murray Arthur sign a piece of paper and also that he obtain his wife's signature. This paper turned out to be a grant deed to the property which the Arthurs had just purchased and purported to transfer title to Davis. Davis testified that Murray Arthur agreed to the transfer in exchange for her cancellation of the $1,600 loan and further agreed to lease the property from her at a monthly rate equivalent to the amount of the mortgage payment. Murray Arthur stated (by way of prior testimony) the paper he signed was never explained to him. He further indicated he and his wife never intended to transfer any title or interest in the property to Davis and he interpreted the blank form he signed as some sort of guarantee of security for the $1,600 loan. Barbara Arthur provided similar testimony.[1]

During the next several years, the Arthurs made all the mortgage payments and handled all the repairs and maintenance on the property.

---

[1] At about the same time as the escrow on the property closed, Barbara Arthur was admitted to the hospital for complicated brain surgery. Much of the testimony at trial concerned her ability to understand the nature of the grant deed which she apparently signed on the day she was released from the hospital. The trial court found she was "incapable of understanding the nature and legal effect of the grant deed ... when she signed it."

They continually occupied the premises. Barbara Arthur served as an officer on the board of directors of a neighborhood residents' association composed exclusively of homeowners. On two occasions, however, the Arthurs disclaimed ownership of the property. In 1970, in response to inquiries regarding nonpayment of hospital bills, Barbara Arthur told the Orange County Medical Center the property was in someone else's name. In 1972, Murray Arthur was subject to a judgment debtor examination in West Orange County Municipal Court relating to additional medical bills. He testified he did not own the residence, but rather rented it from Edith Davis. Despite these two instances, both of which the trial judge determined to be based solely on the Arthurs' desire to avoid payment of substantial medical bills, the court found the Arthurs "during such period asserted a claim of ownership and held themselves out to be the owners of the subject property." During the same period of time, Davis did not repair or maintain the property, pay property taxes, nor did she report any income from the property on her income tax returns.

In December 1973, Davis contacted the Arthurs, asserted her ownership of the property, and requested they begin making rent payments directly to her rather than to the mortgage holder. Davis also notified the mortgage holder of her asserted interest in the property. The Arthurs consistently denied Davis' asserted ownership and continued to make payments directly to the mortgage holder.[2]

In December 1974, the Arthurs filed a complaint based on various legal and equitable causes of action, among them slander of title and a request for cancellation of the deed. Davis cross-complained for ejectment and requested a judgment quieting title in her. A first judgment in favor of plaintiffs was reversed by Division Two of this court. (See 4 Civ. No. 19598, unpub. opn. filed Aug. 14, 1978.) On retrial, Arthur amended her complaint to plead a cause of action to quiet title. In the bifurcated trial which followed, the legal issues were tried to a jury which returned a verdict in favor of Arthur on the action for slander of title and against Davis on the action for ejectment. Damages of $3,700 were awarded to Arthur.[3] On the equitable causes of action, the trial

---

[2]At approximately this same time, the Arthurs defaulted on several monthly mortgage payments. Davis learned of the defaults and made the payments herself, four months' worth at approximately $223 per month. Other than these four payments and the original $1,600 advance, Davis made no outlay for the property.

[3]The $3,700 amount represented the reasonable attorney fees incurred by Arthur in order to quiet title to the property.

court entered findings of fact and conclusions of law which supported Arthur's position. The judgment ordered the deed cancelled and title quieted in Arthur on the condition she reimburse Davis for the various sums paid in connection with the property. Davis now appeals that judgment, alleging some four separate categories of legal error.

*Statute of Limitations*

After the first trial in this case resulted in judgment in favor of the Arthurs, Davis appealed arguing the action to cancel the deed was barred by the statute of limitations since more than four years elapsed between the date of the deed (June 1969) and the filing of the present action (Dec. 1974). (See Code Civ. Proc., § 343 and prior slip opn. at p. 11.) Division Two of this court apparently agreed, holding that in the absence of a prayer to quiet title, the action to cancel the deed was barred. Significantly, however, the court did not reverse with directions to enter judgment in favor of Davis, and her petition for rehearing requesting that relief was denied. It would thus appear the Court of Appeal contemplated additional factual issues which might change the complexion of a subsequent retrial.

■ In addition to arguing "law of the case," Davis renews her statute of limitation contentions, focusing on Arthurs' quiet title and slander of title actions. The statute of limitations on a quiet title action depends on the nature of the plaintiff's underlying right to relief. (*Leeper* v. *Beltrami* (1959) 53 Cal.2d 195, 214 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803].) Thus in the instant case, Arthur claims a right to cancel the deed to Davis based on justifiable mistake as to the nature of the document. The applicable statute of limitations on such an action is three years. (Code Civ. Proc., § 338, subd. 4.) Such cause of action does not accrue, however, "until the discovery, by the aggrieved party, of the facts constituting the ... mistake." (*Ibid.*) The trial court here specifically found, "At no time prior to three (3) years of the filing of this action did Plaintiff or Murray Arthur discover that they had signed a Deed in favor of Edith Davis nor should they have discovered such fact." This finding was supported by substantial evidence. Accordingly, Arthur's quiet title action was not barred by the statute of limitations.

■ Although reason dictates otherwise, the slander of title action poses a more difficult problem. Code of Civil Procedure section 338, subdivision 7, provides the statute of limitations for a slander of title ac-

tion is three years. This provision does not include a statement that the cause of action accrues only after discovery of the slander by the plaintiff. (Compare Code Civ. Proc., § 338, subd. 4, *ante.*) Davis asserts this omission by the Legislature necessarily implies the statute begins to run from the date of the alleged slander. In this case, she notes, the slander occurred with the recording of the deed in 1969.[4] Thus, she argues Arthur's slander of title action is barred by the statute of limitations.

The trial court took issue with Davis' theory, noting a cause of action does not accrue until all the elements of that cause exist. Thus, the court instructed the jury the "statute of limitations for slander of title does not run until a party has suffered pecuniary damage." The claimed item of pecuniary damage in this case involved the Arthurs' incurring legal expenses in an effort to quiet title and cancel the deed. (See *Davis v. Wood* (1943) 61 Cal.App.2d 788, 796-798 [143 P.2d 740].) The Arthurs began incurring these expenses in 1974, shortly before the instant action was filed and well within the three-year statute of limitations.

Under the circumstances of this case, we do not think the trial court's instruction prejudiced Davis. In so concluding, we need not fully endorse the trial court's theory and all its implications.[5] Rather, we look to the purpose underlying statutory periods of limitation. We recently reviewed those purposes in *Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725 [152 Cal.Rptr. 27] and held that, notwith-

---

[4]We note that the constructive notice imparted by virtue of the recording statutes has no applicability here. (See gen. *Anderson* v. *Wilson* (1920) 48 Cal.App. 289, 293 [191 P. 1016].) Such notice is designed to inform *prospective purchasers and mortgagees* regarding the status of title to the property. (Civ. Code, § 1213.) Were the rule otherwise, an owner and possessor of real property would be required to periodically check the official records for wild deeds to insure that the statute of limitations on a slander of title action had not run.

[5]The troubling implication of the instruction as given by the trial court is that a plaintiff, knowing of the act constituting the slander of title, could forego bringing an action to quiet title, waiting instead until he was ready to sell the property and then suing defendant for the impairment of his ability to sell. (See *Gudger* v. *Manton* (1943) 21 Cal.2d 537, 554 [134 P.2d 217], disapproved on other grounds in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 901, p. 3187.) Under such circumstances, an action to quiet title might clearly be barred since, where the action is based on fraud or mistake, the statute of limitations begins to run on the date of discovery of the fraud or mistake. (See *Leeper* v. *Beltrami, supra,* 53 Cal.2d at p. 213.) The potential difference in result seems unjustified; if reasonable diligence is the goal, both actions should be barred. (Cf. *Hocharian* v. *Superior Court* (1980) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829].)

standing the absence of specific statutory language, a cause of action for slander or libel does not accrue until the plaintiff "'could reasonably be expected to discover its existence.' [Citation.]"[6] (*Id.* at p. 731; see also *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 408 [163 Cal.Rptr. 711].) Given the close relationship between defamation actions and an action for slander of title (see 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 327, p. 2593) and the eminently practical policy underlying the discovery rule (see *Howe* v. *Pioneer Mfg. Co.* (1968) 262 Cal.App.2d 330, 345-346 [68 Cal.Rptr. 617]), we see no reason why it should not apply to slander of title actions as well.[7] In the instant case, as noted previously, the facts indicate and the trial court found the Arthurs did not discover the existence of the deed until less than three years before the filing of this action. We therefore conclude Arthur's slander of title action was not barred by the statute of limitations.

## Quiet Title Action

Davis' main attack on the substance of the judgment necessarily focuses on the trial court's decision to quiet title in Arthur.[8] Davis accepts the court's factual findings but asserts numerous legal errors.

■ Davis first argues because the estate of Arthur's deceased husband, Murray, was not made a party to the action, the court erred in

---

[6]In arguing by negative implication that the omission of "rule of discovery" language in Code of Civil Procedure section 338, subdivision 7, indicates a desire by the Legislature that the rule not apply to slander of title actions (see p. 690, *ante*), Davis has failed to present any direct evidence of that asserted legislative intent. We presume diligent research on the part of litigants and, similarly, have been unable to locate any such evidence. In its absence, although the lack of explicit legislative authorization is entitled to some weight, as it was in *Manguso*, we find other factors considerably more persuasive and accordingly prefer to follow *Manguso* in applying the "rule of discovery."

[7]We are cognizant of criticism of *Manguso* and similar cases (see e.g., *Cain* v. *State Farm Mut. Auto. Ins. Co.* (1976) 62 Cal.App.3d 310 [132 Cal.Rptr. 860]) as inadequate piecemeal attempts to formulate a general "rule of discovery" standard for the accrual of causes of action. (See Comment, *Accrual of Statutes of Limitations: California's Discovery Exceptions Swallow the Rule* (1980) 68 Cal.L.Rev. 106, 114-115, 123.) We admit seeing little reason to confine application of the standard to defamation, invasion of privacy and slander of title actions. Nonetheless, given the nature of the trial court's ruling here and considering our role as intermediate appellate court, we prefer a more limited extension of the doctrine at this time.

[8]Davis has also argued Arthur is entitled to no relief due to the illegality under federal housing financing regulations of the $1,600 advance. (See 24 C.F.R. § 203.32.) The trial court did not base its decision on any such illegality and we therefore find it unnecessary to address the question.

quieting title to his former one-half interest in the property. Davis apparently believes the joint tenancy of Barbara and Murray Arthur could have been terminated in 1969 if Murray purported to transfer the property to Davis without adequate consent or capacity on the part of Barbara. Davis' theory, however, runs directly contrary to the trial court's factual finding "[n]either Plaintiff nor Murray Arthur intended to transfer any of their interest in the property to Defendant, Edith Davis...." (Italics added.) Since it was established the subject property was held in joint tenancy by Barbara and Murray Arthur, and all interest in the property passed to Barbara on Murray's death, the trial court did not err in quieting title in Barbara Arthur.

■ Davis next contends the prior Court of Appeal opinion is "law of the case" on the issue of the Arthurs' continuous claim of ownership.[9] As noted previously, however, the earlier opinion clearly contemplated the possible existence of additional factual issues. (See p. 690, ante.) Moreover, additional witnesses testified at the second trial, supporting the Arthurs' claim of ownership and further clarifying the two occasions in which the Arthurs disclaimed ownership as being based solely on the desire to avoid payment of medical bills. The "law of the case" doctrine, being a legal principle, has been held to be inapplicable where the issue is a factual one and where the evidence presented at the second trial differs in any material respect. (See *Moore* v. *Trott* (1912) 162 Cal. 268, 272-273 [122 P. 462]; *Allen* v. *Bryant* (1909) 155 Cal. 256, 258-259 [100 P. 704].)

■ Davis finally argues the trial court should have applied the equitable doctrines of laches and unclean hands to deny Arthur relief. The trial court specifically found, however, that Davis was not prejudiced by any delay. (See *Stafford* v. *Ballinger* (1962) 199 Cal.App.2d 289, 296 [18 Cal.Rptr. 568].) Moreover, any delay by the Arthurs in asserting their rights was certainly insubstantial since the court also found they did not discover their mistake in signing the deed until sometime after December 1, 1973. The doctrine of unclean hands is similarly inapplicable.[10] It is fundamental to operation of the doctrine that the alleged misconduct by the plaintiff "relate directly to the transaction concern-

---

[9]The prior opinion indicated the Arthurs did not appear to be able to state a cause of action to quiet title because they disclaimed ownership of the property on two occasions. (Slip opn. at p. 13.)

[10]Davis repeats the contention in the context of arguing the Arthurs should be estopped from claiming ownership, having previously denied it.

ing which the complaint is made." (*Carman* v. *Athearn* (1947) 77 Cal.App.2d 585, 598 [175 P.2d 926]; see also 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 10, p. 5235.) In the instant case, the alleged misconduct (false denial of ownership) is unrelated to the issue of whether the Arthurs are entitled to relief by virtue of a justifiable mistake as to the nature of the deed which they signed. The misconduct, in fact, occurred a substantial period of time *after* the mistaken deed was signed, but at a time when, according to the trial court, the Arthurs had no knowledge of the existence of the deed.

### Incapacity and Subsequent Ratification

At the close of trial, Davis requested the following instruction, which was refused: "Where a person does not consent to the execution of a Grant Deed, consent may be given subsequently, either by express act, word or deed or impliedly, from the act or conduct of the person. Whether a party has ratified a transaction by subsequent consent depends on that party's intention as disclosed by her declarations or acts." The instruction was apparently directed at the evidence of Barbara Arthur's incapacity (due to brain surgery) at the time the deed was signed. (See fn. 1, *ante.*) In suggesting ratification, Davis merely reargues the evidence concerning Arthur's later denial of ownership.

We need not decide whether the proposed instruction accurately states the law on the subject since it is not reasonably probable the absence of the instruction prejudiced Davis. The trial court found neither Barbara nor Murray Arthur intended to transfer their interest in the property, as well as the fact neither was aware of their signatures on the deed until well after the theoretical ratification proposed by Davis. Under those circumstances, the failure to give the proposed instruction was irrelevant.

### Evidence of Net Worth

■ Davis finally argues the trial court erred in permitting evidence of her net worth (stipulated at $8 million) to be introduced before the jury, ostensibly for the purpose of assessing punitive damages.[11] She contends Arthur failed to present a prima facie case for punitive damages.

---

[11]In fact, the returned jury verdict included no punitive damages.

On the record before us, we are unable to say Arthur failed to establish a prima facie case of "oppression, fraud, or malice" sufficient to justify an exemplary award. (Civ. Code, § 3294.) Such decisions must be left to the discretion of the trial judge, who had the firsthand opportunity to review whatever circumstantial evidence of "oppression, fraud, or malice" which may have been presented.[12] We find no abuse of discretion here.

*Disposition*

Judgment affirmed. Arthur shall recover her costs on appeal.

Work, J., concurred.

**LEVITT, J.*—**I respectfully dissent from the holding affirming the judgment entered on the slander of title action. The traditional rule in tort as well as contract cases is that the statute of limitations begins to run upon the occurrence of the last fact essential to the cause of action. Although sometimes harsh, the fact plaintiff is neither aware of his cause of action nor of the identity of a wrongdoer will not toll the statute (*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271]; *Howe v. Pioneer Mfg. Co.* (1968) 262 Cal. App.2d 330, 340 [68 Cal.Rptr. 617]).[1] The "rule of discovery" applied by the majority, has been devised and applied by courts to ameliorate the harshness of this rule. This judicially recognized exception has been applied in the area of professional malpractice. (See *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].) But the cases granted that exception have refused extension of it to ordinary tort and contract actions, justifying the distinction upon the special nature of the relationship between the professional and the client (*Neel, supra,* at p. 188).

The majority rely upon *Manguso v. Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725 [152 Cal.Rptr. 27], which had relied upon *Cain v. State Farm Mut. Auto. Ins. Co.* (1976) 62 Cal.App.3d 310 [132 Cal.Rptr. 860]. A careful reading of *Cain* discloses several infir-

---

[12]The trial court properly withheld evidence of Davis' net worth from the jury until the case was completed in order to accurately evaluate the strength of Arthur's case for punitive damages.

*Assigned by the Chairperson of the Judicial Council.

[1]The time periods after which redress for different types of legal injuries is prohibited are established by the Legislature.

mities. First, the defendant bore no significant relationship to the plaintiff, and thus did not fall into the *Neel* distinction. Second, the court invoked the discovery rule for an entire class of injury with little reasoning beyond citation of cases applying the discovery rule in other contexts. Third, no consideration was given to whether applying the rule was an encroachment upon the legislative preserve.

The majority, in an endeavor to avoid direct confrontation with these infirmities, indicate in their footnote 6 they find other factors "considerably more persuasive." What other factors? The majority opinion cites only two: (1) the close relationship between defamation actions and an action for slander of title; and (2) the eminently practical policy underlying the discovery rule. The first is a bootstrap argument, extending the unsupported, and I submit improperly founded, trend to yet another entire class of injury. The latter is a clear judicial intrusion of the legislative function.

The court's holding is arrived at in violation of the fundamental rules guiding construction of a statute. The court should ascertain the intent of the Legislature so as to effectuate the purpose of the law (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal. Rptr. 144, 514 P.2d 1224]). "An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them." (*Rich* v. *State Board of Optometry* (1965) 235 Cal. App.2d 591, 604 [45 Cal.Rptr. 512].) "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].) Code of Civil Procedure section 1858 provides: "In the construction of a statute ..., the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, ..."

In those situations where the Legislature has deemed it proper that a cause of action not accrue until the aggrieved party discovers, or should discover, the existence of the cause of action, it has specifically provided for it. (See e.g., Code Civ. Proc.,[2] §§ 337, subd. 3; 338, subd. 4; 338, subd. 5; 338, subd. 6; 339; 339, subd. 3; 340, subd. 5; 340.2, subd.

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise specified.

(a)(2); 340.2, subd. (c)(2); 340.6.) No such statutory language exists in section 338, subdivision 7 providing the limitation period for an action for slander of title to real property, even though such language is found within the same general section relating to fraud or mistake (§ 338, subd. 4), embezzlement (§ 338, subd. 5), malfeasance or misfeasance (§ 338, subd. 6) and actions under sections 17536 of the Business and Professions Code (§ 338, subd. 8).

There was no evidence concerning, and the majority never sought to ascertain, the intent of the Legislature. The majority does not seek to interpret, but to substitute their sense of logic for that of the Legislature.

I would reverse the judgment entered on the slander of title action.

A petition for a rehearing was denied December 24, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 10, 1982.