**999, a corporation,**
**Plaintiff/Appellee/Cross-Appellant,**

v.

**C.I.T. CORPORATION, a corporation,**
**Defendant/Appellant/Cross-Appellee.**

**Nos. 84–6561, 85–6562.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1985.

Decided Nov. 18, 1985.

Earl Benjamin, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for plaintiff, appellee, cross-appellant.

William A. Masterson, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, Cal., William Hughes Mulligan, New York City, for defendant, appellant, cross-appellee.

Before REINHARDT and BEEZER, Circuit Judges, and NIELSEN,* District Judge.

BEEZER, Circuit Judge:

999, a Nevada corporation with its principal place of business in California, brought this diversity of citizenship suit against C.I.T. Corporation ("CIT"), alleging breach of an agreement to provide financing to 999, resulting in the loss of an opportunity to acquire Bee Cee, a Missouri corporation. CIT appeals from a verdict in favor of 999, and 999 filed a cross-appeal to challenge a remittitur of damages. We affirm.

---

* Honorable Leland C. Nielsen, Senior United States District Judge for the Southern District of California, sitting by designation.

# I

## BACKGROUND

In 1982, 999, a holding corporation, decided to acquire Bee Cee, a manufacturer of windows and doors, which was in serious financial trouble. The plan was to use Bee Cee as a "captive buyer" to manufacture finished windows and doors from aluminum frames processed by another 999 subsidiary.

999 signed a management contract in January, 1982 taking control of Bee Cee's operations and agreeing to purchase the corporation's stock. To maintain Bee Cee in operation pending conclusion of the acquisition, 999 obtained accomodations with Bee Cee's creditors, including its major suppliers and lenders, by agreeing to guarantees of Bee Cee debt. Unsecured creditors were offered payment of 30 percent in satisfaction of those debts.

Bank of America, 999's principal lender, concerned about the advisability of the Bee Cee acquisition, notified 999 in May, 1982 that its financing would not be renewed. 999 then sought replacement financing sufficient to continue its own credit needs and to complete the acquisition of Bee Cee. 999 entered negotiations with CIT to obtain approximately $6 million in financing, $300,000 of which would be invested in Bee Cee.

On August 2, 1982, CIT obtained from 999 a deposit of $25,000 pursuant to a letter, upon which was handwritten the terms of "proposed financing." In September, 1982, CIT informed 999 that it had added a condition of a $25,000 per month prepayment penalty. 999 demanded that the new condition be dropped. When CIT insisted, 999 renewed efforts to find an alternative lender.

Even without financing from CIT, 999 proceeded with plans to acquire Bee Cee. An affiliate of 999 was created to purchase the assets of Bee Cee at a creditor's foreclosure sale in October, 1982. Although 999 had obtained substitute financing, it would not be forthcoming until December. Without such financing, 999 was unable to stave off Bee Cee's creditors. The day before the foreclosure sale was to occur, unsecured creditors of Bee Cee filed an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. 999 subsequently ceased its efforts to acquire Bee Cee and fulfilled its financial obligations to Bee Cee creditors under its guarantees.

999 then brought this action against CIT. At trial, the jury returned two separate verdicts of $1.9 million each for 999, one for breach of contract and an implied covenant of good faith, and one for negligent misrepresentation. The court allowed 999 to accept only one verdict. On CIT's motion for a new trial, the court conditioned its denial on a remittitur in the amount of $925,000. 999 accepted and judgment was entered.

# II

## CIT'S APPEAL

### A. Admissions as to Existence of Agreement

On August 2, 1982, Robert J. Sullivan, regional sales manager for CIT, presented to Marge Penfold, president of 999, a letter calling for 999 to make a deposit with CIT of $25,000 and to submit an application for financing. Upon request by Penfold, Sullivan outlined in handwriting upon the letter the terms of "proposed financing." Penfold then signed the letter.

999 contends that this August 2 letter constituted a binding commitment by CIT to provide financing, conditioned only upon an audit to verify the accuracy of 999's financial statements. CIT denies the letter was an agreement to provide financing, as it was addressed to the lender and signed only by the borrower, 999. Rather CIT claims it was only an agreement by CIT to process and review 999's application for financing.

During pre-trial discovery proceedings, 999 served CIT with a request for an admission that the August 2 letter constituted an agreement. After the magistrate

issued an order compelling a response, CIT admitted that it was an agreement although it expressly refused to admit what the terms of the agreement were.

At trial, the district court excluded from evidence a September 23, 1982 letter from 999 counsel, Joel F. McIntyre, written to demand that CIT return the deposit of $25,-000, and stating that "there is no agreement of any kind between you and our client." The trial court held the September 23 letter was inadmissible because it was inconsistent with the CIT admission that an agreement did exist. The district court denied CIT's motion to withdraw or amend its response to the request for admission.

Federal Rule of Civil Procedure 36(b) provides that any matter admitted in response to a request for admission is "conclusively established" unless the court permits withdrawal or amendment of the admission. The court may permit withdrawal or amendment of an admission—

> when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

■ We review a district court's denial of a motion to withdraw or amend a Rule 36 admission for an abuse of discretion. Trial courts are advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2264, at 745 (1970 & Supp.1985).

■ CIT argues that its motion to withdraw the admission was not untimely, even though made in the middle of the trial. CIT claims that it was surprised by the trial court's decision to exclude the September 23 letter as contradictory to the admission, and thus was not aware until that point in time of the need to have the admission withdrawn. This argument cannot be

sustained. At the time of the pre-trial conference, 999 raised its objection to introduction into evidence of the September 23 letter on the express ground that it was inconsistent with CIT's admission of an agreement. CIT was fully aware of this objection and yet it failed to move to withdraw the admission prior to trial.

Still, CIT denies that withdrawal of the admission would have resulted in any prejudice to 999. CIT argues that because 999 was fully aware that CIT contested the existence of any financing agreement, 999 was not placed in the position of suddenly needing to obtain additional evidence to prove this matter. CIT asserts the lack of prejudice is plainly shown by the fact that 999 was placing into evidence other proof of the existence of a financing contract.

■ Had CIT made this argument while moving for withdrawal of the admission before trial, it would have been more persuasive. Instead CIT's motion was not made until the middle of the trial when 999 had nearly rested its case. Once trial begins, a more restrictive standard is to be applied in permitting a party to withdraw or amend an admission. *See Brook Village North Associates v. General Electric Co.*, 686 F.2d 66, 70–73 (1st Cir.1982). The record shows that 999 had relied heavily on the admission as proof of an agreement. The admission already had been shown to the jury through an enlarged duplicate with no objection made by CIT.

■ CIT's argument actually centers on the trial court's exclusion of the September 23 letter. In its reply brief, CIT effectively concedes that its admission of an agreement was properly placed before the jury but that the September 23 letter should have been available as well. However, even accepting CIT's narrow interpretation of its admission, saying it only acknowledged an application processing agreement, the September 23 letter contravenes that admission by stating there was "no agreement of any kind."[1] Evidence inconsistent

---

1. Contrary to CIT's assertion, CIT was not prevented from contesting the existence of a fi-

nancing contract at trial. The trial court never ruled that the August 2 letter or CIT's admission

with a Rule 36 admission is properly excluded. Fed.R.Civ.P. 36(b) advisory committee note (1970); *Shakman v. Democratic Organization of Cook County,* 481 F.Supp. 1315, 1346 n. 35 (N.D.Ill.1979).

It might have been appropriate for the trial court to permit introduction of the September 23 letter subject to a cautionary instruction to the jury that CIT had admitted the existence of some type of agreement. But we cannot conclude that the district court's ruling was such a "clear error of judgment" that it constituted an abuse of discretion. *See Ellensburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985).

### B. Instruction on Breach of Implied Covenant

CIT assigns as an error of law the district court's submission to the jury of the claim for breach of an implied covenant of good faith and fair dealing. CIT claims that, under California law, breach of an implied covenant may give rise to a cause of action in tort only in the context of an insurance contract or fiduciary relationship. *See Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of California,* 36 Cal.3d 752, 768, 686 P.2d 1158, 1166, 206 Cal.Rptr. 354, 362 (1984); *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.,* 708 F.2d 385, 399–400 (9th Cir.1983) (construing California law). The district court's construction of state law is reviewable *de novo.* *In re McLinn,* 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).

■ In this case, the breach of the implied covenant was not submitted to the jury as a separate *tort* claim. The district

court granted CIT's motion *in limine* to exclude any tort recovery and recovery of punitive damages for breach of the covenant. CIT expressly elected to submit the claim of breach of an implied covenant of good faith and fair dealing to the jury as a *contract* remedy. The pertinent instruction was submitted by CIT and both parties agreed to it. The district court properly denied CIT's request to withdraw the instruction on the day before the instructions were to be read to the jury. Having requested the instruction, CIT may not complain of any error in it. *Hargrave v. Wellman,* 276 F.2d 948, 951 (9th Cir.1960).

■ Even if CIT's objection had been timely, any error was harmless. As CIT notes in its reply brief, the claim for breach of the implied covenant as a contract remedy was given to the jury with essentially the same elements as the breach of contract claim. The only risk was redundancy. As the court carefully instructed the jury against granting double damages based on alternate theories, such redundancy was harmless.

### C. Mitigation of Damages

■ CIT contends that the district court erred as a matter of law in failing to instruct the jury on mitigation of damages.[2] In September, 1982, CIT informed 999 that the New York headquarters had added a new condition to the financing agreement of a $25,000 per month penalty if 999 sought to prepay the loan before expiration of the two-year financing period. 999 resisted the imposition of this new term as it desired the flexibility to find new financing, without penalty, if a lender interfered

---

constituted per se evidence of an agreement to provide financing. The court only ruled that CIT was bound to the admission that an agreement of some type existed, and therefore the language in the September 23 letter denying any agreement must be excluded. CIT was not prevented from arguing that the admission applied only to an agreement to process 999's application, nor from arguing that no actual loan agreement existed. In fact, with the one objectionable sentence deleted, CIT used the September 23 letter in making that argument.

**2.** CIT failed to raise mitigation of damages as an affirmative defense in its pleadings, which ordinarily would constitute a waiver of that defense. *See Mayes v. Sturdy Northern Sales, Inc.,* 91 Cal.App.3d 69, 86, 154 Cal.Rptr. 43, 54 (1979); Fed.R.Civ.P. 8(c); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1273, at 322 (1969 & Supp.1985). However, the issue of mitigation was included in the pre-trial order, which has the effect of amending the pleadings. *Federal Deposit Ins. Corp. v. Glickman,* 450 F.2d 416, 419 (9th Cir.1971).

in its business judgment by restricting funding for future ventures. CIT claims 999 should have avoided damages by accepting financing from CIT and later seeking recovery for any damages resulting from the unjustified prepayment penalty.[3]

■ Failure to submit a proper jury instruction is a question of law reviewable by this court de novo. See Tibbs v. Great American Ins. Co., 755 F.2d 1370, 1374 (9th Cir.1985).

The general principle that "victims of legal wrong should make reasonable efforts to avoid incurring further damage" is undisputed. Davies v. Krasna, 14 Cal.3d 502, 515, 535 P.2d 1161, 1169, 121 Cal.Rptr. 705, 713 (1975). The question in this case is whether the aggrieved party is required to mitigate damages by accepting the very performance that constitutes the breach of contract. Under California law, once a defendant has breached a contract, the mitigation doctrine requires a plaintiff to accede to new terms interposed by the defendant only if the new terms are trivial or "inconsequential" in relation to the amount of foreseeable damages the plaintiff would otherwise suffer from the breach.[4] The relevant California cases indicate that the determination of whether an unjustified

new term is "inconsequential" or "substantial" is a matter for the court to decide.

■ We cannot conclude that CIT's requirement of a $25,000 per month prepayment penalty was so "inconsequential" that 999 was required to accept it in mitigation of damages. This is particularly true in light of 999's strong concerns about the potential impact of such penalties on its business practices.

Furthermore, at that point in time, 999 still had good reason to believe that the Bee Cee acquisition could be concluded and that alternative financing without any prepayment penalty could be obtained. It was more than reasonable for 999 to refuse financing from CIT that was subject to the new unjustified condition, and instead seek to mitigate damages by finding replacement financing.

## D. Foreseeability of Damages

CIT contends the parties did not contemplate any damages resulting from failure of 999 to acquire Bee Cee. CIT claims it was never informed by 999 that continued operation of Bee Cee and its eventual acquisition by 999 were dependent upon 999's access to financing. Based on this claim that the damages were not a foreseeable

---

3. CIT also argues that 999 could have received, from CIT or another financer, sufficient funds to settle the claims of Bee Cee creditors and thus conclude its acquisition of Bee Cee. However, the record is uncontroverted that 999 could not borrow the additional funds for investment in Bee Cee without first refinancing its entire company. The Bank of America loan agreement prevented such an additional loan and Bank of America security agreements covered all available 999 assets. More importantly, CIT expressly stated at trial that they were not contending that 999 had failed to mitigate damages by seeking alternative financing. The only mitigation issue CIT raised below was whether 999 was required to accept the new prepayment penalty term that constituted breach of contract.

4. In Severini v. Sutter-Butte Canal Co., 59 Cal. App. 154, 210 P. 49 (1922), an owner of an irrigated vineyard refused to accede to the water company's demand for earlier payment in violation of contract terms, and the water company terminated water service. The court ruled that the "inconsequential" extra interest cost of

advance payment, amounting to $1.53, viewed in relation to the large foreseeable damage to his crop from lack of water, approximately $7,000, was such that the plaintiff should have acceded to the unjustified demand. 210 P. at 50; see also J. Calamari & J. Perillo, The Law of Contracts 540 & n. 24 (1977).

Contrastingly, in Schultz v. Town of Lakeport, 5 Cal.2d 377, 54 P.2d 1110, modified on other grounds 55 P.2d 485 (1936), the disputed water bill amounted to $129.65, compared with allowable damages of $226.50 to the plaintiff's garden when the water supply was shut off. The Schultz court held the amount in dispute was "comparatively substantial" and accordingly the plaintiff was not required to make the payment to mitigate damages. 54 P.2d at 1113–14. See Seaboard Music Co. v. Germano, 24 Cal.App.3d 618, 623, 101 Cal.Rptr. 255, 258 (1972) ("the rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights").

See also J. Friedman, Contract Remedies in a Nutshell § 1.2(c), at 30–31 (1981).

consequence of the breach of the financing agreement, CIT asks us to reverse the verdict and remand for a new trial on damages.

The governing rule in California regarding award of damages from a contract breach is clear:

It is a settled principle that general damages that may be awarded for breach of contract are ordinarily confined to those which would naturally arise from the breach, or which might have been reasonably contemplated or foreseen by the parties at the time they contracted, as the probable result of the breach. (Civ. Code, § 3300; *Hunt Bros. Co. v. San Lorenzo, etc., Co.*, 150 Cal. 51, 56, 87 P. 1093; 1 Witkin, Summary of Cal.Law (8th ed. 1973) § 639, pp. 542–43.)

*Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev., Inc.*, 66 Cal.App.3d 101, 125, 135 Cal.Rptr. 802, 816 (1977). If special circumstances result in an unusual injury, damages cannot be recovered unless those circumstances were known or should have been known by the breaching party at the time the contract was made. *Sabraw v. Kaplan*, 211 Cal.App.2d 224, 27 Cal. Rptr. 81, 83 (1962). Unless it can be ruled on as a matter of law, the question of whether consequential damages are foreseeable is one of fact to be determined by the trier of fact. *See Sun Maid Raisin Growers v. Victor Packing*, 146 Cal.App.3d 787, 790, 194 Cal.Rptr. 612, 614 (1983).

■ The jury, by virtue of its verdict, found that CIT did know or should have known that its conduct endangered 999's acquisition of Bee Cee. There is ample evidence in the record to support that conclusion.[5] It is not within the province of this court to redetermine the facts as found by the jury. U.S. Const. amend. VII; *At-lantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 358–59, 82 S.Ct. 780, 782–83, 7 L.Ed.2d 798 (1962).

### E. Evidence of CIT's Net Worth

Because 999 sought punitive damages from CIT on the basis of fraudulent misrepresentation, 999 was permitted to present to the jury evidence that CIT's net worth was almost $1 billion. CIT contends this improper evidence contaminated the jury's award of damages, even though the jury expressly declined to find fraud or assess punitive damages.

Although punitive damages are not available for mere breaches of contract, even if fraudulent or in bad faith, *Dryden v. Tri-Valley Growers*, 65 Cal.App.3d 990, 999, 135 Cal.Rptr. 720, 726 (1977), this case was also presented to the jury on the alternate tort theory that CIT fraudulently misrepresented to 999 that no prepayment penalty would be required as a condition to financing.

If a prima facie case of oppression, fraud, or malice was established, then it was proper to submit evidence of the defendant's net worth to the jury. *See* Cal. Civ.Code § 3294 (West Supp.1985). Otherwise, presentation to the jury of such evidence was distracting and prejudicial. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977). If such evidence was improperly introduced, we must reverse the verdict for a new determination of compensatory damages untainted by the net worth evidence. *Farmy v. College Housing Inc.*, 48 Cal.App.3d 166, 183, 121 Cal.Rptr. 658, 670 (1975). The determination of whether a prima facie case has been established, allowing the introduction of evidence on punitive damages, is left to the

---

5. The president of 999 testified CIT was advised that the Bank of America was placing considerable pressure on 999 to obtain new financing immediately. 999 had informed CIT of its intention to acquire Bee Cee and that it had made substantial guarantees to Bee Cee creditors. CIT was told that some of the financing funds would be used to settle debts with Bee Cee creditors. An officer of Bank of America testified that CIT agents had discussed with him the Bank's concerns about 999's proposal to acquire Bee Cee and the Bank's decision not to renew 999's financing. The president of Bee Cee testified that he had fully explained the Bee Cee acquisition to CIT agents. The business coordinator for CIT testified that he was aware of Bee Cee's financial distress and knew it could go into bankruptcy, and that CIT proceeded to consider financing for 999 despite its reservations about Bee Cee's future prospects.

discretion of the trial court. *Arthur v. Davis*, 126 Cal.App.3d 684, 694–95, 178 Cal. Rptr. 920, 925–26 (1981).

■ There was sufficient evidence from which to draw an inference that CIT agents willfully misrepresented to 999 that financing would be provided without a prepayment penalty, and acted oppressively to force 999 to submit to a new and onerous term. Although the jury concluded otherwise, there was evidence, for example, that CIT later took advantage of 999's desperate need for financing to coerce 999 into accepting a new prepayment penalty term. In particular, CIT's refusal to refund 999's $25,000 deposit, unless 999 succumbed to the new term, might have been indicative of oppression and fraudulent intentions on CIT's part. Although this is a close case, we conclude it was not an abuse of discretion to submit the punitive damages issue to the jury.

### III

### 999'S CROSS–APPEAL

After trial, the jury returned two verdicts for 999 under separate theories of the case, each verdict amounting to $1,972,378. 999 had stipulated that only one of the verdicts would be effective if the jury returned verdicts on both related counts. The district court found the jury verdict of $1,972,378 "grossly excessive" and stated that $925,000 was the maximum figure of damages which a rational jury could have reached. The trial court denied CIT's motion for a new trial on the condition that 999 accept a remittitur reducing the judgment to that amount. 999 brings this cross-appeal arguing that the district court abused its discretion both in requiring 999 to accept a remittitur and in setting the amount of the remittitur.

In *Donovan v. Penn Shipping Co., Inc.*, 429 U.S. 648, 650, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977), the Supreme Court "reaffirm[ed] the longstanding rule that a plaintiff in federal court, whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted."

999 argues that where a defendant initiates an appeal, and the objective of avoiding further litigation has been negated, the plaintiff should not be precluded from cross-appealing the propriety of the remittitur. *See Miller v. National American Life Ins. Co.* 54 Cal.App.3d 331, 343, 126 Cal.Rptr. 731, 738 (1976) (*quoting Plesko v. City of Milwaukee*, 19 Wis.2d 210, 221, 120 N.W.2d 130, 135 (1963)).

■ However, the rule in this circuit long has been that the plaintiff cannot contest the validity of a remittitur to which he has consented, even on a cross-appeal. *S. Birch & Sons v. Martin*, 244 F.2d 556, 560 (9th Cir.), *cert. denied*, 355 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 49 (1957). *See also* 6A J. Moore, *Federal Practice* ¶ 59.08[7], at 59–206 (2d ed. 1984). 999's cross-appeal is dismissed.

**AFFIRMED.**