**Jose A. SONODA, Plaintiff–Appellant,**

v.

**Antonio R. CABRERA, personally and in his official capacity as Secretary of Department of Finance; Froilan C. Tenorio, personally and in his official capacity as Governor of the Commonwealth of the Northern Mariana Islands, Defendants–Appellees.**

**No. 00–15426.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2001

Filed July 3, 2001

---

Theodore R. Mitchell and Jeanne H. Rayphand, Saipan, Commonwealth of the Northern Mariana Islands, for the plaintiff-appellant.

William E. Betz, Assistant Attorney General, Saipan, Commonwealth of the Northern Mariana Islands, for the defendant-appellees.

Before: B. FLETCHER, CANBY, and PAEZ, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

Plaintiff-appellant Jose A. Sonoda was terminated as Director of the Division of Customs Services in the Department of Finance of the Commonwealth of the Northern Mariana Islands ("CNMI"). He brought this 42 U.S.C. § 1983 action against Froilan C. Tenorio, the former Governor of CNMI, and Anthony R. Cabrera, the Finance Secretary ("defendants"). The § 1983 suit alleges that the defendants terminated Sonoda in violation of his due process and First Amendment rights. The district court sua sponte granted summary judgment to the defendants based upon qualified immunity and Sonoda timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we hold that the district court erred in determining that the defendants were entitled to qualified immunity, we reverse and remand.

## BACKGROUND

The plaintiff-appellant, Jose A. Sonoda, was originally employed by the CNMI government in November of 1995 as an immigration inspector in the Department of Labor and Immigration. Shortly after assuming this position on December 2, 1995, Sonoda approached then-Governor Froilan

Tenorio seeking a different (and higher paying) position. Governor Tenorio offered Sonoda the position of Director of the Division of Customs Services, a position in the Department of Finance. On December 11, 1995, Sonoda resigned as Immigration Inspector, stating he had been "appoint[ed] by the Governor." The following day, Sonoda signed an "Excepted Service Employment Contract." The contract specified that plaintiff was hired for a two-year period beginning December 12, 1995. The contract incorporated by reference a separate document entitled "Conditions of Employment" agreement, which Sonoda had signed the day before. This agreement stated in part 10(a) that an employee appointed by the Governor "serves at the pleasure of the Governor and may be terminated by the Governor without cause and without prior notice." [1]

On March 4, 1996, Sonoda received a letter of termination from the Secretary of Finance (defendant Cabrera). The letter purported to take the termination action pursuant to Executive Order 94–3, § 509(a), which provides that department directors shall serve under the direction of department heads and at the pleasure of the Governor. A few days prior to being terminated, on March 1st, Sonoda had testified at a legislative hearing. Sonoda contends that he was fired because of the testimony he provided at that hearing, in violation of his First Amendment rights of free speech and association. Specifically, he contends that he was terminated because of his perceived affiliation with the Republican party. The defendants counter that he was fired after several complaints regarding his job performance and Sonoda's failure to address those complaints. The defendants further claim that they had no knowledge of the content of his March 1st testimony at the time of his termination. Sonoda was given no notice nor opportunity to be heard.

On March 6, 1996, Sonoda filed a formal grievance with Cabrera regarding his termination without cause. In the grievance letter, Sonoda claimed that he was a civil service employee and therefore could only be fired for cause and was entitled to due process, including notice and an opportunity to be heard. In support of this argument, Sonoda attached a recent district court order in the case of *Olopai–Taitano v. Guerrero, et. al,* No. 93–0019 (Order of Oct. 13, 1994), which held that only the legislature may exempt employees from the civil service system. The Department of Finance summarily rejected Sonoda's grievance, stating that Sonoda knowingly contracted for an employment arrangement that allowed the governor to terminate him without cause or notice.

Sonoda filed suit in district court pursuant to 42 U.S.C. § 1983, claiming that the defendants had violated his due process and First Amendment rights. He served discovery requests on the defendants, including a request for admissions. Because the defendants did not timely respond to the request for admissions, Sonoda moved for an order that would deem admitted all requests for admission. He also filed a motion seeking summary judgment. The district court granted the admissions motion, stating "that the Defendants' dilatoriness, coupled with prejudice to the Plaintiff, warranted the sanction and accordingly, granted Plaintiff's Motion" to deem admitted Sonoda's requests for admissions. The defendants filed a motion for leave to amend their admissions under Fed. R. Civ. P 36(b). Prior to promptly ruling on either the 36(b) or summary judgment motions, the district court certified to the CNMI Su-

---

1. The Conditions of Employment agreement was referenced in, but not attached to, the employment contract signed by Sonoda on December 12, 1995.

preme Court the question of whether § 509(a) of E.O. 94–3 was a constitutional exercise of the executive power under Article III of the Commonwealth Constitution. The CNMI Supreme Court determined that E.O. 94–3 was unconstitutional under the Commonwealth Constitution. The defendants appealed the decision of the CNMI Supreme Court to the Ninth Circuit. Finding that no federal question was raised before or by the CNMI Supreme Court, we dismissed for lack of jurisdiction. *Sonoda v. Cabrera*, 189 F.3d 1047 (9th Cir.1999).

Finally, on January 20, 2000, the district court issued the order that forms the basis of the current appeal. The court: (1) granted the defendant's 36(b) motion to amend its admissions; (2) denied plaintiff's motion for summary judgment; (3) sua sponte granted summary judgment in the defendants' favor in light of qualified immunity; and (4) dismissed all supplemental claims. Sonoda timely appeals the grant of the 36(b) motion and the sua sponte grant of summary judgment based upon qualified immunity.

## STANDARD OF REVIEW

We review for abuse of discretion the district court's grant of a 36(b) motion. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir.1985) (holding that we review for abuse of discretion the district court's denial of a motion to withdraw or amend an admission). We review de novo the district court's grant of summary judgment. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir.2000).

## DISCUSSION

### I. 36(b) Motion

Pursuant to Rule 36(a), if a party fails to answer a request for admissions within thirty days, the requested items are deemed admitted. However, Rule 36(b) provides, in pertinent part:

[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

Accordingly, two requirements must be met before an admission may be withdrawn: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal. The party who obtained the admission has the burden of proving that allowing withdrawal of the admission would prejudice its case. *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir.1995). The prejudice contemplated by 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of the truth; rather, it relates to the difficulty a party may face in proving its case, for example by the unavailability of key witnesses in light of the delay. *Id.* at 1349 (finding only inconvenience but not prejudice despite the moving party's contention that if the admission had been timely it would have been able to engage in more extensive trial preparation); *see also 999*, 776 F.2d at 869 (finding prejudice when the motion was not made until the middle of trial when 999 had nearly rested its case and the record revealed that 999 had relied heavily on the admission and had even shown the admission to the jury).

The district court's grant of the 36(b) motion was not an abuse of discretion. First, presentation of the merits of this action would not be subserved if the admissions remained in effect. Here, the admissions included: "Do you admit that you disapproved of Plaintiff's attendance at and testimony to the Special Committee on Substance Abuse of the CNMI House

of Representatives on March 1, 1996?"; "Do you admit that you are aware of Article XX of the NMI Constitution's mandate that all government employees are within the civil service system unless provided otherwise by law?"; "Do you admit that until Plaintiff testified on March 1, 1996, before the House Special Committee on Substance Abuse that you were satisfied with his performance of his duties and responsibilities as Director of Customs?"; "Do you admit that [your belief that Sonoda sympathized with the Republicans] is the reason for Plaintiff's termination without cause on March 6, 1996?". In light of Sonoda's due process and First Amendment claims, these admissions would effectively eliminate a merits determination.

Regarding prejudice, the district court found that because the motion was made pre-trial Sonoda would not be hindered in presenting his evidence to the factfinder. We agree and therefore affirm the district court's decision to allow withdrawal of the admissions pursuant to Fed.R.Civ.P. 36(b).

## II. Due Process

■ When government officials assert the defense of qualified immunity to an action under § 1983, a court evaluating the defense should first determine whether the plaintiff has shown the deprivation of a constitutional right. *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).[2] If the plaintiff has established a constitutional violation, the court then must determine " 'whether the right was clearly established at the time of the alleged violation,' " *id.* (quoting *Conn v. Gabbert,* 526 U.S. 286, 290, , 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)), and whether a reasonable officer could have believed his conduct was lawful. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993);

*Mendoza v. Block,* 27 F.3d 1357, 1360 (9th Cir.1994).

### A. Deprivation of Constitutional Right

■ An individual "has a constitutionally protected property interest in continued employment ... if he has a reasonable expectation or a 'legitimate claim of entitlement' to it, rather than a mere 'unilateral expectation.' " *Brady v. Gebbie,* 859 F.2d 1543, 1547–48 (9th Cir.1988). Under CNMI law, civil service employees may only be terminated for cause and are entitled to notice and a hearing prior to termination. *See* 1 N.Mar.I.Code § 8117(g); 1 N.Mar.I.Code § 8102(f); Personnel Service System Rules and Regulations, Part III.D2, Sub-part J. Non-civil service employees (or "exempted employees"), in contrast, may be terminated without cause and are not entitled to any sort of grievance procedure to protest their discharge. *See* Excepted Service Personnel Regulations (effective June 15, 1990), 17 Commonwealth Register 13413 (1995)(Part I, sub-part 9). Accordingly, because Sonoda was terminated without notice and an opportunity to be heard, if at the time of his termination Sonoda was a civil service employee, then his due process rights were violated. As discussed below, whether Sonoda was a civil service employee at the time of his termination is itself a question that turns on the constitutionality (under the CNMI Constitution) of a local executive order that attempts to exempt several government positions from the civil service system.

Article III, § 15 of the Commonwealth Constitution invests the Governor with limited power to reorganize the executive branch. It provides:

the affirmative defense was asserted by the defendants in their answer.

**2.** Although the district court sua sponte granted summary judgment in favor of the defendants based upon qualified immunity,

The governor may make changes in the allocation of offices, agencies and instrumentalities and in their functions and duties that are necessary for efficient administration. If these changes affect existing law, they shall be set forth in executive orders which shall be submitted to the legislature and shall become effective sixty days after submission, unless specifically modified or disapproved by a majority of the members of each house of the legislature.

In 1994, the CNMI Governor promulgated Executive Order No. 94–3 ("E.O.94–3"), which declared in § 509(a):

In order to assure the accountability of government managers, all officials at or above the level of division director, or the equivalent by whatever title known, shall be appointed by and serve at the pleasure of the Governor, provided that such official shall report to and serve under the direction of the head of any supervisory official, such as a department head.

Upon submission to the legislature, the CNMI Senate voted to approve E.O. 94–3, while the House voted to modify it. Thus, under Article III, § 15 of the CNMI Constitution, the Order become law.

The constitutionality of this provision was quickly called into question, however, because it appeared in conflict with both Article II § 5 of the CNMI Constitution, which vests law-making power exclusively in the Commonwealth Legislature, and with Article XX, § 1, which states: "Exemption from Civil Service shall be as provided by law, and the commission shall be the sole authority authorized by law to exempt positions from civil service classification." The Supreme Court of CNMI had previously interpreted Article XX to mean that "only if the legislature passes a law providing for exemptions may there be exemptions from the Civil service *system.* Only the legislature can exempt govern- ment employees from the civil service *system.*" *Manglona v. CNMI Civil Service Commission,* 3 N.M.I. 243, 249, 1992 WL 396825 (1992) (emphasis in original).

In light of this apparent conflict, the district court below certified the question of whether E.O. 94–3 violated the CNMI Constitution to the CNMI Supreme Court. That Court in turn held that the promulgation of § 509(a) of the Order was an unconstitutional exercise of executive power. *Sonoda v. Cabrera,* Certified Question No. 96–001 (CNMI Sup.Ct. April 29, 1997) *available at* http://www.cnmi-law.org/htmldl/s96–001cq.pdf. Specifically, the Court ruled that (1) while Article III of the CNMI Constitution vests the Governor with the power to reorganize the executive branch, he may "not create a system whereby employment positions would be created and appointed at his pleasure"; and (2) to the extent Article XX of the CNMI Constitution provides that only the legislature may exempt positions from the civil service, the Governor's attempt to do so was an unconstitutional usurpation of the legislature's law-making function. *Id.*

The CNMI Legislature enacted 1 N. Mar. I.Code § 8131(a), which provides that "[e]xcept as provided in this section, the civil service system shall apply to all employees of and positions in the Commonwealth government. . . ." The Legislature had enumerated twelve exemptions from the civil service system, none of which included Sonoda's position. In response to the certified question, the CNMI Supreme Court clarified that "absent Legislative action, only those enumerated exemptions are valid . . . [and] . . . the silent 'acceptance' by the legislature is insufficient to create an appointment power in the Governor."

At the time of Sonoda's employment and termination, his position as Director of the Division of Customs Services was not one of the twelve statutorily ex-

empted positions. Therefore, under CNMI law at that time, and regardless of the employment contract he signed,[3] Sonoda was a civil service employee. As a civil service employee, Sonoda had a constitutionally protected property interest in his continued employment. His termination without cause, notice, or opportunity to be heard violated his due process rights.[4] *See Brady*, 859 F.2d at 1547.

### B. Qualified Immunity

The individual defendants, to the extent they have been sued in their individual capacities for violation of § 1983, have raised qualified immunity as an affirmative defense. Because Sonoda has established a constitutional violation based upon due process, it is necessary to determine whether the defendants are entitled to qualified immunity. The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *Har-*

*low v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, "government officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. We have articulated a two-part inquiry: (1) Was the law governing the official's conduct clearly established? (2) Under the law, could a reasonable official have believed the conduct was lawful? *Act Up!/Portland*, 988 F.2d at 871–72.

The district court determined that it was clearly established that civil service employees may not be terminated without cause and without notice and an opportunity to be heard. Furthermore, on the basis of the CNMI Supreme Court's decision in *Manglona*, 1992 WL 396825 (1992), the district court determined that it was also clearly established that only the CNMI Legislature may exempt employees from the civil service system.[5] Nevertheless,

---

**3.** On appeal the defendants rely heavily on the fact that the terms of the employment contract made clear that Sonoda was not a civil service employee and could be fired without cause or notice. Therefore, the defendants assert, he "must be held to the terms of his bargain." The district court decision seems at least influenced by this argument, as it states: "The decision [to grant summary judgment based upon qualified immunity] is tempered in full by the fact that plaintiff got the full benefit of his bargain; he received nothing more or less than what he bargained for at the beginning." This argument is unpersuasive for several reasons. First, it is irrelevant to the qualified immunity inquiry, which is the context in which the district court noted it. Second, as discussed above, the CNMI Supreme Court has held that only the legislature may exempt employees from the civil service system. Surely, this must mean that an individual is precluded from exempting himself from the system via a contract.

**4.** At oral argument, counsel for the defendants informed the court that the CNMI

House had recently passed a bill that attempts to exclude from the civil service system all government employees hired under excepted service contracts such as the one entered into by Sonoda. H.B. No. 12–053, HD1. The bill, which amends 1 N. Mar. I.Code § 8131(a)(2), includes a retroactivity provision. It states: "Section 2. Applicability. This Act shall apply to all current, prior and future excepted service contracts with the Commonwealth government." Having determined that Sonoda has a vested property right in his employment as a civil service agent, we conclude that retroactive application of the new statute would amount to an unconstitutional taking of property. *See Grimesy v. Huff*, 876 F.2d 738, 743–44 (9th Cir.1989). Thus, we conclude that the new statute may not retroactively terminate Sonoda's property interest.

**5.** The two separate cases raising similar issues are *Olopai–Taitano v. Guerrero*, Civil No. 93–0019 (October 13, 1994), and *Gourley v. Sablan*, Civil No. 94–0046 (August 8, 1995). Both orders hold that only those positions listed by the CNMI Legislature in 1 Common-

the district court held that the defendants were entitled to qualified immunity because the passage of E.O. 94–3 created a background circumstance by which "a reasonable official [could] have believed the conduct was lawful." *Act Up!/Portland,* 988 F.2d 868, 871–71 (9th Cir.1993). The district court believed that the passage of E.O. 94–3 created considerable confusion as to whether it was permissible to treat a non-statutorily exempted employee as an exempted employee and therefore terminate him without cause or notice, that it was reasonable for the defendants to believe that it was proper to terminate Sonoda without cause or process.

██ We disagree with the district court's analysis because it does not take into account the full set of circumstances in existence at the time of Sonoda's termination-circumstances that rendered E.O. 94–3 patently unconstitutional at that time. *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (holding that the fact that the constitutional question involved was not "open and shut" is a factor in determining whether qualified immunity was appropriate). As a preliminary matter, two years prior to Sonoda's termination, the CNMI Supreme Court had ruled explicitly that "only if the legislature passes a law providing for exemptions may there be exemptions from the civil service system. Only the legislature can exempt government employees from the civil service system." *Manglona,* 1992 WL 396825, at *3. Defendants argue that the legislature's acquiescence in E.O. 94–3 rendered the application of *Manglona* unclear because it raised the following question: Is acquiescence by the legislature equivalent to the legislature passing a law?

In responding to the certified question the CNMI Supreme Court said no. Although this decision obviously came after Sonoda's termination, the plain language of *Manglona* made this proposition clearly established at that time.

Significantly, in *Manglona* the Court said an exemption can be made "only if the legislature passes a law." There are two reasons why legislative acquiescence was insufficient to satisfy the *Manglona* requirement that the "legislature pass" any employee exceptions. First, the CNMI legislature is "comprised of a senate and a house of representatives." CNMI Const. Art. 11, § 1. The CNMI Senate voted to approve E.O. 94–3, but the House voted to modify it. Although approval by one house of the bicameral legislature was sufficient to acquiesce in the passage of the executive order, it was clearly insufficient to constitute legislative action. Second, the Enactment provision of the CNMI Constitution delineates the process by which the "legislature passes a law." Article II, § 5(c) states "The legislature may not enact a law except by bill and no bill may be enacted without the approval of at least a majority of the votes cast in each house of legislature." Thus, even if legislative acquiescence enables an executive order to become effective, this is not the equivalent of the "legislature pass[ing] a law."

Furthermore, to the extent there was any lingering uncertainty, a federal district court in the *Olopai–Taitano* case had ruled in 1994 that E.O. 94–3 was ineffective in its attempt to exempt division directors from the civil service system. The defendants were fully aware of this deci-

---

wealth Code § 8131(a) are exempt from the civil service system. The district court also issued another unpublished order (Re Defendants' Motion for Reconsideration; November 18, 1994) in the *Olopai–Taitano* case.

This Order deals directly with the constitutionality of E.O. 94–3. It, like the CNMI Supreme Court did later in the response to Judge Munson's certified question, found E.O. 94–3 unconstitutional.

sion because it had been provided to them by Sonoda almost immediately upon his termination.

It was impermissible for the defendants to rely upon an executive order that was patently unconstitutional under precedent of the CNMI Supreme Court and had been expressly declared unconstitutional by a federal district court. Therefore, we reverse the district court's sua sponte grant of summary judgment for the defendants and hold that the defendants are not entitled to qualified immunity with respect to Sonoda's due process claims.

### III. First Amendment

The First Amendment prevents the government, with rare exception, from interfering with its employees' freedom to believe, speak, and associate. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 72, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). Sonoda asserts that he was terminated because of his exercise of political beliefs and associations and free speech rights. Specifically, he contends that following his testimony before the CNMI Legislature regarding controlled substance abuse, the defendants perceived him as allied with the Republican party and terminated him on this basis. The district court did not address Sonoda's affirmative case. Rather, the district court stated that because it found the defendants were entitled to qualified immunity, based on its holding that the E.O. 94–3 created a reasonable belief on the defendants' part that Sonoda was not a civil servant, then "the reason or ground upon which plaintiff was fired is irrelevant."

Regardless of whether the defendants reasonably believed Sonoda to be an exempted employee, this was legal error because even an at-will employee cannot be terminated if the reason for the termi-

nation was the exercise of constitutionally protected First Amendment freedoms. *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). We therefore reverse the district court's grant of summary judgment for the defendants on the First Amendment claim and remand to the district court for proceedings consistent with this holding.

\* \* \* \* \* \*

For the reasons stated above, we AFFIRM the district court's decision to allow withdrawal of the admissions pursuant to Fed.R.Civ.P. 36(b). We REVERSE the district court's sua sponte grant of summary judgment on the basis of qualified immunity with respect to Sonoda's due process and First Amendment claims and we REMAND to the district court for proceedings consistent with this opinion. We award costs to Plaintiff–Appellant Sonoda.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.